UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Maria Fuentes and Jose Fuentes,<br><br>Plaintiffs,<br><br>-v-<br><br>CVS Albany, LLC and CVS Pharmacy, Inc.,<br><br>Defendants. | 2:24-cv-449<br>(NJC) (LGD) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Maria Fuentes and Jose Fuentes (together, "Plaintiffs") initiated this action against CVS Albany, LLC ("CVS Albany") and CVS Pharmacy, Inc. ("CVS Pharmacy," and together, "Defendants") on November 28, 2022 in the Supreme Court of the State of New York, County of Suffolk, bringing negligence and loss of consortium claims under New York tort law. (Not. Removal Ex. A, Compl., ECF No. 1-1.) Defendants removed the action to the Federal District Court for the Eastern District of New York on January 22, 2024. (Not. Removal, ECF No. 1.) Though initially represented, Plaintiffs are now proceeding pro se, following their counsel's withdrawal on May 3, 2024. (Min. Order, May 3, 2024.) Before the Court is Defendants' motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 41(b) for failure to prosecute ("Motion"). (Mot. Dismiss ("Mot."), ECF No. 19.) For the following reasons, the Court grants Defendants' Motion and dismisses Plaintiffs' claims without prejudice.

## BACKGROUND

The following facts are taken from Plaintiffs' Complaint and Bill of Particulars, which provides a statement of damages (Bill of Particulars, ECF No. 1-3), and Defendants' Notice of

Removal. Plaintiffs Maria Fuentes and Jose Fuentes are a married couple living in Suffolk County, New York. (Compl. ¶¶ 1–2, 43.) CVS Pharmacy is a corporate pharmacy chain incorporated in and maintaining its principal place of business in Rhode Island. (Compl. ¶¶ 17–18; Not. Removal at 3.) CVS Albany is a limited liability company whose sole member is CVS Pharmacy. (Not. Removal at 3.)

Plaintiffs allege that, during the time relevant to this lawsuit, both Defendants "owned," "managed," "maintained," "operated," "controlled," "occupied," were "lessor[s] of," were "lessee[s] of," "resided at," "had a duty to inspect," and "had a duty to keep . . . in proper repair" the CVS pharmacy store located at 450 Main Street, Farmingdale, New York. (Compl. ¶¶ 6–16, 19–29.) On December 8, 2021, Maria Fuentes, while at this CVS pharmacy, "was struck by" a "Covid Shield," due to its "dangerous and defective condition." (Compl. ¶¶ 33–34.) The Complaint alleges that Defendants had "actual and constructive notice" of and "created" the "dangerous and defective condition," and that the incident was caused by Defendants' negligence. (Compl. ¶¶ 35–38.) Maria Fuentes seeks recovery for "severe and permanent personal injuries, pain and suffering, and special damages." (Compl. ¶ 39.) Jose Fuentes seeks damages for the "depriv[ation] of the society, services and consortium" of Maria Fuentes. (Compl. ¶¶ 44–45.)

## PROCEDURAL HISTORY

On November 28, 2022, Plaintiffs filed the Complaint in the Supreme Court of the State of New York, County of Suffolk, alleging New York common law tort claims for negligence and loss of consortium. (Compl.) On February 17, 2023, Defendants served their joint answer and discovery demands. (Answer & Disc. Demands, ECF No. 1-2.) Among Defendants' discovery demands included the demand that Plaintiffs respond within 30 days stating the "[a]mounts

claimed as lost earnings, including detailed statement as to how such lost earnings were computed" and "amounts claimed for" the following: "[p]hysicians' services"; "[m]edications, supplies and x-rays"; "[n]urse, therapist and chiropractic services"; "[h]ospital expenses"; and "[a]ny other related expenses." (Answer & Disc. Demands at 9–10.) The discovery demands also included a notice informing Plaintiffs of the requirement under New York law that they provide, within 20 days, all relevant medical bills and underlying medical information (*e.g.*, doctors' names and addresses, doctors' examination reports). (Answer & Disc. Demands at 20–22.) Plaintiffs failed to respond to Defendants' discovery demands, despite follow-up letters sent by Defendants' counsel on the following dates: May 26, 2023; August 10, 2023; September 19, 2023; and October 27, 2023. (Not. Removal Ex. D, Defs.' Counsel's Ltrs., ECF No. 1-4.) Defendants also filed a request for a preliminary conference in the state court action, and on August 25, 2023, the state court ordered Plaintiffs to respond to Defendants' discovery demands by September 18, 2023, which Plaintiffs failed to do. (Not. Removal Ex. E, Court Order, ECF No. 1-5.) On December 12, 2023, Defendants filed a motion to dismiss for failure to provide discovery or, in the alternative, to compel discovery in the state court action. (Not. Removal Ex. F, Mot. Dismiss or Compel Disc., ECF No. 1-6.)

On January 15, 2024, Plaintiffs served on Defendants a Bill of Particulars, dated January 12, 2024. (Bill of Particulars at 13.) In the Bill of Particulars, Plaintiffs for the first time specified the alleged injuries for which they seek damages, including cervical disc herniations requiring steroid injections, radiculopathy requiring steroid injections, a right shoulder tear, diffuse traumatic brain injury with loss of consciousness, and $65,846.69 in special damages. (Bill of Particulars at 1–6, 8.) On January 22, 2024, Defendants filed their Notice of Removal, removing the case to federal court. (Not. Removal at 7.)

3

On March 29, 2024, Plaintiffs' counsel, Bergman Bergman Fields & Lamonsoff, LLP, filed a motion to withdraw as attorneys for Plaintiffs. (Mot. Withdraw, ECF No. 9; Gabel Decl., ECF No. 9-1; Mem. Supp. Mot. Withdraw, ECF No. 9-2.) Plaintiffs' counsel represented that "a breakdown of the lawyer-client relationship has occurred making it impossible for this law firm to continue further representation of [P]laintiffs . . . in this action." (Gabel Decl. ¶ 3.) On April 2, 2024, Magistrate Judge Lee G. Dunst, to whom this case is assigned for certain pre-trial matters, held a status conference. (Min. Order, Apr. 2, 2024 ("April 2 Order"), ECF No. 10.) At that conference, he ordered Plaintiffs to inform the Court by April 23, 2024, whether they intend to retain new counsel or proceed pro se and held Plaintiffs' counsel's motion to withdraw in abeyance pending Plaintiffs' response. (*Id.*) On April 5, 2024, Plaintiffs' counsel filed proof of service of the April 2 Order on Plaintiffs via mail to their latest known address. (Aff. Service April 2 Order, ECF No. 11.) Plaintiffs did not respond to the April 2 Order.

On May 3, 2024, Judge Dunst held another status conference, during which he granted Plaintiffs' Counsel's motion to withdraw. (Min. Order, May 3, 2024 ("May 3 Order"), ECF No. 12.) Judge Dunst again ordered Plaintiffs to inform the Court whether they intend to retain new counsel or proceed pro se, this time by May 24, 2024. (*Id.*) Judge Dunst cautioned Plaintiffs that failure to respond "may result in recommending to District Judge Nusrat Jahan Choudhury that the case be dismissed for failure to prosecute." (*Id.*) On May 6, 2024, Defendants filed proof of service of the May 3 Order on Plaintiffs via mail to their latest known address. (Aff. Service May 3 Order, ECF No. 13.) Plaintiffs did not respond to the May 3 Order.

On May 28, 2024, after Plaintiffs failed to respond to the Court's April 2 and May 3 Orders, Judge Dunst ordered for a third time that Plaintiffs inform the Court whether they intend to retain new counsel or proceed pro se, this time by June 14, 2024. (Elec. Order, May 28, 2024

4

("May 28 Order").) Judge Dunst further informed Plaintiffs that "failure to comply may result in dismissal of the case for failure to prosecute." (*Id.*) Later that day, Defendants filed proof of service of the May 28 Order on Plaintiffs via mail to their latest known address. (Aff. Service May 28 Order, ECF No. 14.) Once again, Plaintiffs did not respond to the May 28 Order.

On June 17, 2024, in light of Plaintiffs' repeated failures to respond to the Court's orders, Judge Dunst ordered Defendants to "file a pre-motion conference letter with District Judge Choudhury seeking to dismiss this action for failure to prosecute" by July 12, 2024. (Elec. Order, June 17, 2024 ("June 17 Order").) On June 20, 2024, Defendants filed proof of service of the Court's June 17 Order on Plaintiffs via mail to their latest known address. (Aff. Service June 17 Order, ECF No. 15.) That same day, Defendants filed a letter requesting a pre-motion conference seeking to dismiss this action for failure to prosecute, and on June 21, 2024, they filed proof of service of the letter on Plaintiffs via mail to their latest known address. (Defs.' June 21, 2024 Ltr. Mot., ECF No. 16; Aff. Service June 21, 2024 Ltr. Mot., ECF No. 17.) Shortly thereafter, this Court issued an order directing Plaintiffs to file any response by June 28, 2024 and encouraging Plaintiffs to consult with the Hofstra Law Pro Se Clinic. (Elec. Order, June 21, 2024 ("June 21 Order").) Defendants filed proof of service of the June 21 Order on Plaintiffs via mail to their latest known address (Aff. Service June 21 Order, ECF No. 17.) Plaintiffs did not submit any response to Defendants' letter.

On July 18, 2024, Defendants filed another letter, seeking permission to file a motion to dismiss the Complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (Defs.' July 18, 2024 Ltr. Mot., ECF No. 18.) On July 23, 2024, this Court granted Defendants' request and set a briefing schedule for the Rule 41(b) motion, directing: (1) Defendants to file their motion by July 30, 2024; (2) Plaintiffs to file any response by August 13, 2024; and (3)

Defendants to file any reply by August 30, 2024. (Elec. Order, July 23, 2024.) Defendants then filed the instant Motion on July 29, 2024. (Mot.) Plaintiffs filed no opposition. On October 2, 2024, Defendants filed a letter with the Court, noting Plaintiffs' failure to oppose the Motion and reiterating their request that the Court dismiss this action for failure to prosecute. (Defs.' Oct. 2, 2024 Ltr., ECF No. 20.)

**JURISDICTION**

28 U.S.C. § 1332(a) grants federal district courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1441 permits a defendant to remove an action filed in state court that satisfies the diversity jurisdiction requirements of 28 U.S.C. § 1332(a). Diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity among the plaintiffs and defendants and that the amount in controversy exceed $75,000. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020). Defendants, as the parties asserting jurisdiction in this action, bear the burden of establishing that the Court has diversity jurisdiction. *See Proman o/b/o M/Y "EASTBOUND AND DOWN" v. Gatsby Yacht Grp., LLC*, 599 F. Supp. 3d 127, 129–30 (E.D.N.Y. 2022) (citing *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)).

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile," or in other words, "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). "For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42,

6

48 (2d Cir. 2012). "The citizenship of a limited liability company is determined by the citizenship of each of its members." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016).

The second requirement of diversity jurisdiction—an amount in controversy exceeding $75,000—is equally important. The party "invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (citation omitted). The amount in controversy alleged may not be conclusory; rather, it must be supported by factual allegations in the complaint. *Wood v. Maguire Automotive, LLC*, 508 F. App'x. 65, 65 (2d Cir. 2013) (affirming dismissal of complaint for lack of subject matter jurisdiction where plaintiff's "allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth").

28 U.S.C. § 1446(b)(3) requires that a notice of removal be filed "within 30 days after receipt by the defendant . . . of . . . [a] paper from which it may first be ascertained that the case is one which is or has become removable." *See also* 28 U.S.C. § 1446(c)(3)(A) (providing that "information relating to the amount in controversy in the record of the State proceeding . . . shall be treated as an 'other paper' under subsection (b)(3)."). Notwithstanding this rule, "[a] case may not be removed under subsection (b)(3) on the basis of [diversity] jurisdiction . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). "If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith . . . ." 28 U.S.C.

§ 1446(c)(3)(B). Congress introduced this "bad faith" exception to the one-year limit on removal of diversity cases in 2011 to clarify that the one-year limit on removal is procedural, not jurisdictional, and therefore does not act as an absolute bar on removal. *See Federal Courts Jurisdiction and Venue Clarification Act of 2011*, Pub. L. No. 112–63, 125 Stat. 758 (2011); H.R.Rep. No. 112-10 at 15; *see also Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014).

"[T]he Second Circuit has not yet had an occasion to interpret the scope of the bad faith exception." *Mojica v. Walmart Stores East, LP,* No. 23-cv-214, 2023 WL 3259983, at *2 (E.D.N.Y. May 4, 2023); *see also Ehrenreich*, 994 F. Supp. 2d at 288. "The primary justification offered by courts granting extensions has been strategic behavior by the plaintiff." *Ehreneich*, 994 F. Supp. 2d at 288 (quoting *Hill v. Delta Intern. Machinery Corp.*, 386 F. Supp. 2d 427, 432 (S.D.N.Y. 2005)); *see also Martinez v. Yordy*, No. 16-cv-5, 2016 WL 8711443, at *3 (E.D.N.Y. Feb. 19, 2016) ("The exception to the one-year limitations requires more than just bad faith; it requires bad faith *plus* the motive to prevent removal."); *J.P. Morgan Chase Bank, N.A. v. Caires*, No. 17-cv-1298, 2017 WL 3891663, at *3 (D. Conn. Sept. 6, 2017) (holding that "[g]arden variety litigation misconduct, not part of an improper effort to defeat diversity jurisdiction, does not excuse untimely removal," since "the state court is fully capable of addressing and/or sanctioning any such conduct"). District courts in this Circuit have "relied on the timing of a plaintiff's actions and the nature of the action itself to determine whether a plaintiff's actions were made in bad faith for the purpose of preventing removal to federal court." *Martinez*, 2016 WL 8711443, at *2; *see also Mojica*, 2023 WL 3259983, at *2–3. For example, in *Mojica*, the court held that the defendants established "bad faith" where the plaintiff failed to serve their statement of damages under New York law for 18 months after her initial complaint

was filed and despite three letter requests from the defendants. 2023 WL 3259983, at *2; *see also Ford-Smith v. HMS Host Corp.*, No. 19-cv-947, 2020 WL 1242394, at *5 (N.D.N.Y. Mar. 16, 2020) ("bad faith" established where the plaintiff failed to serve a statement of damages despite four follow-up requests from the defendant). By contrast, in *Martinez*, the court found that the defendants did not establish "bad faith" where the plaintiffs failed to serve their statement of damages, but the "defendants did not take action for five months and did not move the court to compel that information before the statutory time had passed." 2016 WL 8711443, at *3.

Here, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. The Complaint and Bill of Particulars establish that Plaintiffs are citizens of New York. *See* Compl. ¶¶ 1–2 (alleging Plaintiffs' residence in New York); Bill of Particulars at 9 (describing Maria Fuentes's medical treatment in New York); *Lever v. Lyons*, No.16-cv-5130, 2021 WL 302648, at *7 (E.D.N.Y. Jan. 28, 2021) (setting forth factors courts consider in determining an individual's citizenship, which include "current residence" and "the location of a person's physician"). The Notice of Removal further alleges that CVS Pharmacy is incorporated in and has its principal place of business in Rhode Island, and that CVS Pharmacy is the sole member of CVS Albany, a limited liability company. (Not. Removal at 3.) Finally, the Notice of Removal identifies that Plaintiffs' Verified Bill of Particulars "alleges significant injuries, including cervical radiculopathy, cervical disc herniations and injections, lumbar injections and radiculopathy, right shoulder tears, and diffuse traumatic brain injury with loss of consciousness," as well as special damages in the amount of $65,846.69.[1] (Not. Removal at 3–4;

---

[1] Under N.Y. C.P.L.R. § 3017(c), "[i]n an action to recover damages for personal injuries or wrongful death, the complaint . . . shall not state the amount of damages to which the pleader deems himself entitled."

9

*see also* Bill of Particulars at 1–6, 8.) Thus, Defendants have shown a "reasonable probability" that the amount-in-controversy (including significant physical injuries, $65,846.69 in special damages, and loss of consortium claims) exceeds $75,000. *Pyskaty*, 856 F.3d at 223.

Further, Defendants have sufficiently alleged that the "bad faith" exception to the one-year removal period applies. As detailed in the Notice of Removal, Defendants took the following actions: (1) they served their discovery demands on February 17, 2023; (2) they sent follow-up letters on May 26, 2023, August 10, 2023, September 19, 2023, and October 27, 2023; (3) they obtained a court order requiring Plaintiffs to respond to Defendants' discovery demands by September 18, 2023; and (4) they ultimately filed a motion to dismiss for failure to provide discovery or, in the alternative, to compel discovery on December 12, 2023. (Not. Particulars at 4–5; Answer & Disc. Demands; Defs' Counsel's Ltrs.; Mot. Dismiss or Compel Disc.). Plaintiffs' did not respond with a Bill of Particulars until January 15, 2024. Plaintiffs' failure to comply with discovery demands and provide a statement of damages for eleven months combined with their failure to provide any justification for this delay, including their failure to comply with a court order requiring their response, gives rise to the inference of bad faith. *See Mojica*, 2023 WL 3259983, at * 3 ("The Court cannot condone Plaintiff's attempt to put Defendants in a lose-lose situation by forcing them to file a notice of removal either: (1) within the one-year limit but without knowledge of Plaintiff's actual damages request; or (2) with knowledge of the damages request but outside of the one-year time period.").

Accordingly, Defendants have established that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a), 1446(c)(1).

## LEGAL STANDARDS

When considering a motion to dismiss for failure to prosecute under Rule 41, Fed. R. Civ. P., a court must weigh five relevant factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Peters v. CBS Viacom*, No. 23-cv-463, 2023 WL 8270781, at *2 (2d Cir. Nov. 30, 2023) (quoting *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014)). "Generally, no factor by itself is dispositive." *Id.* (citing *Baptiste*, 768 F.3d at 216.) A court's "authority to invoke dismissal for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 F. App'x 107, 109 (2d Cir. 2001) (quotation marks omitted).

"[D]ismissal is a 'harsh remedy to be utilized only in extreme situations . . . .'" *Sessoms on behalf of V.C. v. Comm'r of Soc. Sec.*, No. 21-cv-1788, 2022 WL 511646, at *1 (E.D.N.Y. Feb. 21, 2022) (quoting *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)). Accordingly, district courts "should be especially hesitant to dismiss for procedural deficiencies where . . . the failure is by a *pro se* litigant." *Hunter v. N.Y. State Dep't Corr. Servs.*, 515 Fed. Appx. 40, 42 (2d Cir. 2013). "When imposed, the sanction of dismissal operates as an adjudication upon the merits, but may be without prejudice if so specified by the court imposing it." *Flores v. Mario's Pizzeria of Oyster Bay*, 2024 WL 1704721, at *2 (E.D.N.Y. Apr. 19, 2024) (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982)); *see also* Fed. R. Civ P. 41(b) ("Unless the dismissal order states otherwise, a dismissal [for failure to prosecute] . . . operates as an adjudication on the merits.").

## DISCUSSION

First, Plaintiffs' failure to prosecute the case since March 2024, when their counsel moved to withdraw, means that the case has been effectively stalled for nearly nine months. *See Sessoms*, 2022 WL 511646, at *1 (finding delay favors dismissal where plaintiff has "stalled this case for nearly eight months" and noting that "courts have consistently found that delays in the range of five to six months counsel in favor of" dismissal) (collecting cases). Accordingly, this factor weighs in favor of dismissal.

Second, Plaintiffs have been notified at least four times since May 2024 that failure to respond to this Court's orders may result in dismissal for failure to prosecute without prejudice. Judge Dunst's May 3 Order directing Plaintiffs to "advise the Court, by [May 24, 2024], whether they will proceed pro se or whether they will retain new counsel" and warning Plaintiffs that "[f]ailure to respond . . . may result in recommending . . . that the case be dismissed for failure to prosecute" was served on Plaintiffs via mail to their latest known address on May 6, 2024. (May 3 Order; Aff. Service May 3 Order.) Judge Dunst's May 28 Order directing Plaintiffs to "submit their untimely response . . . by [June 14, 2024]" and again warning Plaintiffs that "failure to comply may result in dismissal of the case for failure to prosecute" was served on Plaintiffs via mail to their latest known address on the same day. (May 28 Order, Aff. Service May 28 Order.) Judge Dunst's June 17 Order directing Defendants to file a pre-motion letter seeking to dismiss the action for failure to prosecute, in light of Plaintiffs' failure to comply with the Court's orders, was served on Plaintiffs via mail to their latest known address on June 20, 2024. (June 17 Order; Aff. Service June 17 Order.) This Court's July 23 Order setting a briefing schedule for Defendant's Motion and again putting Plaintiffs "on notice that continued failure to comply with the Court's orders may result in the dismissal of this action *without prejudice* for failure to

12

prosecute" was served on Plaintiffs via mail to their latest known address on July 24, 2024. (July 23 Order (emphasis added); Aff. Service July 23 Order.) Accordingly, while this factor weighs in favor of dismissal, the fact that this Court notified Plaintiffs that their case may be dismissed *without prejudice* weighs against dismissal *with prejudice*.

Third, prejudice to Defendants can be "presumed as a matter of law" here, where Plaintiffs "repeatedly failed to file documents that the [C]ourt ordered, even after being warned that [they were] risking dismissal." *U.S. ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 256–57 (2d Cir. 2004) (citing *Lyell Theatre Corp.*, 682 F.2d at 39–40, 43). Accordingly, this factor weighs in favor of dismissal.

Fourth, "[t]he interest in alleviating docket congestion" weighs in favor of "closing a case that has stalled for more than four months due to plaintiff's failure to comply with court orders . . . ." *Wilson v. Doe 1-4*, No. 21-cv-5170, 2022 WL 2065030, at *2 (E.D.N.Y. June 8, 2022); *see also Sessoms*, 2022 WL 511646, at *2 (same for "a case that has stalled for nearly eight months"). Plaintiffs' failure to prosecute this case means that nothing has happened in this case for nearly nine months. Accordingly, this factor weighs in favor of dismissal.

Fifth, the "Court has considered the efficacy of sanctions less than dismissal and has concluded that they are inadequate." *Vanterpool v. Blackman*, No. 12-cv-2961, 2013 WL 5973874, at *4 (E.D.N.Y. Nov. 5, 2013). "District courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Id.* (quoting *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) (quotation marks and brackets omitted). Nevertheless, while Plaintiffs' months-long failure to obtain new counsel indicates that they have no intention of prosecuting this action further, this Court "should be especially hesitant to dismiss for procedural deficiencies

13

where . . . the failure is by a *pro se* litigant." *Hunter*, 515 Fed. Appx. at 42. While dismissal is appropriate here, Plaintiffs' counsel's withdrawal and Plaintiffs' subsequent pro se status weigh against the issuance of the "harsh remedy" of dismissal with prejudice; a dismissal without prejudice is a more appropriate lesser sanction. *See Sessoms*, 2022 WL 511646, at *1 ("[D]ismissal is a 'harsh remedy to be utilized only in extreme situations . . . .'"); *Flores*, 2024 WL 1704721, at *2 ("When imposed, the sanction of dismissal operates as an adjudication upon the merits, but may be without prejudice if so specified by the court imposing it.").

## CONCLUSION

For the reasons set forth above, the Court dismisses the Complaint in its entirety without prejudice for failure to prosecute under Rule 41 of the Federal Rules of Civil Procedure. (Compl., ECF No. 1-1.) The Clerk of the Court shall enter judgment accordingly and shall mail a copy of this Order to Plaintiffs at their address of record and note such mailing on the docket. This case is closed.

Dated: Central Islip, New York
December 13, 2024

                                                */s/ Nusrat J. Choudhury*
                                                NUSRAT J. CHOUDHURY
                                                United States District Judge